J-S39028-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DUSTIN MICHAEL LEESE | : | |
| | : | |
| Appellant | : | No. 103 MDA 2023 |

Appeal from the PCRA Order Entered December 16, 2022
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0002418-2018

BEFORE:  DUBOW, J., McLAUGHLIN, J., and McCAFFERY, J.

MEMORANDUM BY McLAUGHLIN, J.:                **FILED: JANUARY 3, 2024**

Dustin Michael Leese appeals from the order denying his Post Conviction Relief Act ("PCRA") petition. **See** 42 Pa.C.S.A. §§ 9541-9546. Leese claims he is entitled to relief due to ineffectiveness of plea and appellate counsel. We affirm.

The PCRA court summarized the facts as follows:

On March 18th, 2018, Officer Shaun Goodman allegedly received a phone call from Dustin Leese. [Leese] asked Officer Goodman about an ongoing custody situation he was having with [K.L.] (hereinafter "Victim") and [L.L.] ([hereinafter] Maternal Grandmother).

[Leese] allegedly told Officer Goodman that Maternal Grandmother entered his apartment and took his daughter from him that morning. When asked why the Maternal Grandmother would have snatched the child from his care, [Leese] responded that he was fighting with the Victim the previous day and that Victim probably said that he raped her. This statement further prompted Officer Goodman to ask why that was, and [Leese] stated that during the morning of March 17, 2018, [Leese] and Victim had sex, but Victim got upset. He further allegedly told

Officer Goodman that while they don't have sex often when they do, he likes rough sex.

While Officer Goodman was on the phone with [Leese], he received a phone call from Maternal Grandmother about a domestic situation between Victim and [Leese]. Officer Goodman asked to speak with Victim and allegedly invited Maternal Grandmother and Victim down to the station to be interviewed, and they complied with Officer Goodman's request.

While at the station Victim spoke with Officer Goodman; Officer Goodman recorded the conversation. Victim told Officer Goodman that [Leese] wanted to have anal sex with her, but she did not want to have anal sex because it caused her pain. The two engaged in sexual intercourse; however, at some point during the sexual intercourse, [Leese] flipped Victim over onto her stomach[, put his forearm around her neck,] and began to choke her to the point of unconsciousness while he tried to perform anal sex on her. The Victim also allegedly tried to tell [Leese] to stop, but as she attempted to, [Leese] increased the grip on his forearm, making it difficult to speak. Eventually, [Leese] loosened his grip, and Victim left the bed and locked herself in the bathroom. . .

Officer Goodman arrested [Leese] on March 18th, 2018, for felony strangulation. . .

Subsequently, the Commonwealth amended the information to include charging [Leese] with rape. . .

Before commencing the trial [on January 13, 2020], [Leese's t]rial [c]ounsel informally asked for a jury instruction for a mistake of fact for both the rape and strangulation charge. The [c]ourt instructed their law clerk to see if the mistake of fact jury instruction was warranted [for the] jury for the case. The record is absent as to what the reasoning was by the [c]ourt; however, both [t]rial [c]ounsel and [Leese] stated that they were given the impression that the jury would not receive a mistake of fact instruction and they would be left without a defense. Based on that information, [Leese] decided to enter an **Alford**[1] plea [to strangulation].

---

[1] ***North Carolina v. Alford***, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

PCRA Court Opinion in Support of Order Pursuant to Pa.R.A.P. 1925(a) ("PCRA Ct. Rule 1925(a) Op."), filed 3/20/23, at 1-4 (citations and footnote omitted).

Sentencing was continued to June 1, 2020, due to the COVID-19 pandemic. Prior to sentencing, in May 2020, Leese filed a counseled motion to withdraw his **Alford** plea, asserting "that he is innocent of all charges [and] that undersigned counsel was ineffective." Motion to Withdraw Plea, 5/28/20, at ¶ 4. The sentencing hearing was continued to June 30, 2020, so the Commonwealth could respond to the motion.

On June 29, 2020, Leese's counsel filed a motion to withdraw as counsel. Counsel indicated in the motion that Leese had informed him that "he would like for counsel to withdraw as the attorney of record from this case so that a public defender may enter his or her appearance." Motion to Withdraw, filed 6/29/20, at ¶ 2.

At a hearing on June 30, 2020, the court addressed the issue of Leese's representation. The court stated:

> This is somewhat complicated by the fact that you've indicated in your motion through your counsel withdrawal that you feel your attorney was ineffective. That has now triggered your attorney making a request that he be allowed to withdraw as counsel. The problem I have with that is then nobody will be here to address your motion to withdraw your guilty plea. You will be without counsel for that purpose[.]

N.T., 6/30/20, at 2. Leese responded that he applied for a public defender to represent him and was waiting for his attorney to withdraw. **Id.** at 2-3. The court granted counsel's motion to withdraw and continued the hearing on Leese's motion to withdraw his plea to July 20, 2020. **Id.** at 3.

Leese appeared at the hearing on his motion to withdraw his plea without counsel. N.T., 7/20/20, at 1. Leese said that he did not qualify for a public defender and was without funds to retain a private attorney. *Id.* at 2. Leese requested a continuance and stated he would be able to reapply for a public defender the following week because he would "be under the income guidelines." *Id.* at 3, 6. The Commonwealth objected to Leese's request for a continuance stating that Leese had had ample opportunity to obtain another attorney. *Id.* at 3. The court noted to Leese that "we're eight months out and you still don't have an attorney." *Id.* at 3. The court denied the request for a continuance and proceeded to address Leese's motion to withdraw his plea. In denying the motion to withdraw his plea, the court stated:

> [Leese] has not laid a proper foundation for his motion to withdraw [his] guilty plea. He simply asserts he is not guilty. Under the [R]ules of [C]riminal [P]rocedure, simply asserting that he is not guilty is not sufficient to justify withdrawing [one's] guilty plea.

*Id.* at 8-9. The court then sentenced Leese to a term in county prison of one year less one day to two years less two days, followed by five years' probation, with credit for time served. *Id.* at 10. The court deferred Leese's reporting so he could apply for work release and continue to seek representation by the Public Defender. *Id.* at 11. The court then noted:

> I haven't done this because you're without counsel. You had counsel and chose to be without counsel and then took no legitimate steps to avoid the complications as a result of your decision.

*Id.*

Leese filed a direct appeal claiming the court abused its discretion when it denied his motion to withdraw his plea.[2] This Court affirmed. *See Commonwealth v. Leese*, 256 A.3d 23 (Table), 2021 WL 1907753, at *1 (Pa.Super. 2021) (unpublished mem.). We found that the trial court did not abuse its discretion in denying Leese's motion because Leese made only a bare assertion of innocence and failed to make any "colorable demonstration, under the circumstances, such that permitting withdrawal of the plea would promote fairness and justice." *Id.* at *4 (quoting *Commonwealth v. Norton*, 201 A.3d at 112, 120-21 (Pa. 2019)). We further noted that the trial court properly considered the potential prejudice to the Commonwealth that would result if Leese was permitted to withdraw his plea, because while Victim was ready to proceed at Leese's trial, she indicated she was now unwilling to further cooperate with the Commonwealth after Leese filed his motion to withdraw his plea because she thought the process was taking too long. *Id.*

Leese filed a *pro se* PCRA petition in October 2021. The PCRA court appointed counsel who filed an amended petition. The court held an evidentiary hearing on the petition on November 9, 2022.

At the hearing, Leese presented the testimony of an expert in forensic pathology, Dr. Jonathan Briskin. He testified that he reviewed photographs of Victim, Victim's physical exam report, and video interviews. N.T., 11/9/22, at

---

[2] Leese also asserted a claim of ineffectiveness of plea counsel, but this Court found that claim was premature. *See Commonwealth v. Leese*, 256 A.3d 23 (Table), 2021 WL 1907753, at *4 (Pa.Super. 2021) (unpublished mem.).

16-17. Dr. Briskin stated that the exam report stated that petechial hemorrhages were found on Victim. *Id.* at 18. He explained that petechial hemorrhages are "one of the manifestations that you can see in a strangulation case[.]" *Id.* However, based on his viewing of the photographs, he testified that he did not see petechial hemorrhages. *Id.* at 20-21, 30-31. Dr. Briskin surmised that the photographs showed "more of a rash that can be caused by any number of things." *Id.* at 21. Based on the evidence he reviewed, he could not determine whether the sexual acts between Leese and Victim were consensual or nonconsensual, as the physical evidence was inconclusive. *Id.* at 22-23, 29. He noted that he did not see any other indicia of a forceful sexual engagement, such as bruising around the neck or inner thigh area. *Id.* at 23. Dr. Briskin recognized that he could not determine whether Victim's voice was affected by the strangulation by simply looking at photographs. *Id.* at 26. Dr. Briskin said he would have been available to testify if he had been contacted earlier about the case. *Id.* at 24.

Next, Leese's plea counsel testified at the evidentiary hearing. Plea counsel testified that Leese informed him he was innocent and that "the marks on the alleged victim's body were a result of consensual sex, rough sex that they had routinely." *Id.* at 34. Plea counsel stated that retaining an expert was not a part of his trial strategy. *Id.* at 35-36. He explained:

> So Mr. Leese had told me that they had sex, it was consensual sex, that they had had rough sex in the past, which included not necessarily choking, but hands around neck.

> And then in the police report, the alleged victim gave a statement to the police in which she corroborated that, that in the past they -- at least on one occasion that he had put his hands around her neck and that was part of their -- their sexual routine, for lack of a better word.
>
> So my strategy was basically to argue that it was consensual sex, albeit potentially rough sex, but consensual; any marks on her body were the result of that. And then subsequent to consensual sex, she essentially made up the story about rape and/or assault in order to gain the upper hand in a custody – very drawn-out custody dispute they had had.

*Id.* at 36.

Plea counsel also pointed out that retaining an expert would have been cumulative because the Commonwealth's expert report was inconclusive as to whether a sexual assault occurred. *Id.* at 45. Counsel believed the Commonwealth's report was favorable to Leese and testified "it's always better to have the Commonwealth's witness say something that is beneficial to your case." *Id.* at 45-46.

Plea counsel did not specifically remember Leese talking to him about an expert. *Id.* at 35. He only recalled Leese telling him that Victim had seizures which could have possibly caused marks on her body. *Id.*

Plea counsel further testified that, on the scheduled trial date, he informed the trial court in chambers that he would be presenting a defense of consent. *Id.* at 37. He stated that after the court researched the issue, it "indicated that that line of argument from defense would not be permitted." *Id.* Plea counsel informed Leese of the court's ruling and they both agreed that the ruling made their defense "less compelling." *Id.* Plea counsel testified

that the prosecutor then agreed to dismiss the sex charges and Leese agreed to enter an *Alford* plea to the strangulation charge. *Id.* at 37-38.

Plea counsel testified that in May 2020, four months after Leese entered his plea, he received an email from Leese requesting him to file a motion to withdraw his plea. *Id.* at 39. He acknowledged that Leese sent him a text message a few days after Leese entered his plea that said, "So where do we go from here? I'm not very happy about being forced to take that deal." However, he said he did not interpret those statements as an indication that Leese wanted to withdraw his plea at that time. *Id.* at 40. Counsel instead thought Leese's question meant, "What's next[?]" *Id.*

Plea counsel stated that within two weeks of receiving Leese's email in May 2020, he filed a motion to withdraw Leese's plea. *Id.* at 41. Although counsel did not believe the motion would be granted because a mere assertion of innocence is insufficient to support a successful motion to withdraw a plea, counsel complied with Leese's request. *Id*. at 42-43. Plea counsel also testified that none of the text messages Leese sent to him after his plea indicated anything about the failure to retain an expert. *Id.* at 47.

Leese's appellate counsel next testified at the evidentiary hearing. Appellate counsel testified that she did not raise on appeal the issue that Leese was without counsel at the hearing on his motion to withdraw his plea and at sentencing because she believed the claim lacked merit. *Id.* at 54-56. She pointed out that Leese's plea counsel withdrew at Leese's own request, and

the court had already continued the hearing for Leese to obtain new counsel. *Id.* at 55.

Lastly, Leese testified at the evidentiary hearing. Leese stated he was prepared to go to trial on the scheduled trial date. *Id.* at 58. He said that in 2018, he emailed his attorney's paralegal stating that he wanted to hire an expert, writing, "[W]e're going to have to subpoena a dr for the criminal trial to get the petechiae thrown out as all of [Victim's] medication can cause that[.]" *Id.* at 59-62. Leese testified that he later had a meeting with his counsel in which he said an expert was discussed, but counsel never brought it up again. *Id.* at 62. Leese testified that he wanted a medical expert to testify because of the physical evidence in the case. *Id.* at 63. On the date of the scheduled trial, Leese stated that his attorney informed him that he would likely be convicted of all charges considering his inability to argue Victim's motive due to the court's ruling. *Id.* at 64-65.

Leese testified that since "everything on our defense was thrown out," he felt compelled to take a plea. *Id.* at 65. Leese conceded that the court colloquied him about his decision to take a plea and whether he was satisfied with counsel. *Id.* He stated that he told the court that there was nothing else his counsel could have done because he "didn't know what else to say really." *Id.* at 66. Leese testified that shortly after he entered his plea, he texted counsel, "[W]hat happened[?] *Id.* at 67. He stated that he explicitly asked counsel in an email to withdraw his plea four months after he entered his plea. *Id.* at 68.

Leese said that he would not have entered his plea if he had been aware of Dr. Briskin's report and testimony. *Id.* at 71-72. He maintained that he entered his plea at least in part due to the physical evidence and that Dr. Briskin's testimony would have given him a defense. *Id.* at 72. Leese indicated that he had completed his incarceration but was still on probation at the time of the hearing. *Id.* at 70.

On December 16, 2022, the court denied the petition. The court found Leese not to be credible and found plea counsel to be credible. *See* PCRA Court's Opinion Denying Petitioner's Request for Post Conviction Collateral [Relief], ("PCRA Ct. Op.") filed 12/16/22, at 5. This appeal followed.

Leese raises the following issues:

Did the lower court err in dismissing Dustin Michael Leese's Amended PCRA Petition where:

1) plea counsel was ineffective in failing to secure the testimony of a medical expert as the absence of such a witness forced Leese into entering an unknowing and involuntary *Alford* plea;

2) plea counsel was further ineffective for delaying in filing a Motion to Withdraw Plea and in ultimately filing a patently deficient motion that was doomed to failure; and

3) appellate counsel was ineffective in failing to argue the lower court erred in proceeding with a hearing on Leese's Motion to Withdraw Plea as well as sentencing where Leese had no counsel and did not waive his right to counsel for the proceeding?

Leese's Br. at 4 (formatting altered).

On appeal from the denial or grant of relief under the PCRA, our review is limited to determining "whether the PCRA court's ruling is supported by the

- 10 -

record and free of legal error." ***Commonwealth v. Presley***, 193 A.3d 436, 442 (Pa. Super. 2018) (citation omitted).

"[C]ounsel is presumed to be effective and the burden of demonstrating ineffectiveness rests on appellant." ***Commonwealth v. Rivera***, 10 A.3d 1276, 1279 (Pa.Super. 2010). To obtain relief based on a claim of ineffectiveness, a petitioner must establish: "(1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result." ***Commonwealth v. Spotz***, 84 A.3d 294, 311 (Pa. 2014). "When assessing whether counsel had a reasonable basis for his act or omission, the question is not whether there were other courses of action that counsel could have taken, but whether counsel's decision had any basis reasonably designed to effectuate his client's interest." ***Commonwealth v. Williams***, 141 A.3d 440, 463 (Pa. 2016). Prejudice in this context means that, "absent counsel's conduct, there is a reasonable probability the outcome of the proceedings would have been different." ***Commonwealth v. Velazquez***, 216 A.3d 1146, 1149 (Pa.Super. 2019) (citation omitted). A failure to meet any of these prongs bars a petitioner from obtaining relief. ***Commonwealth v. Sneed***, 45 A.3d 1096, 1106 (Pa. 2012).

Leese first argues his plea counsel was ineffective for failing to secure a medical expert, which caused him to enter an unknowing plea. Leese's Br. at 27. He maintains that an expert witness would have provided an explanation for the physical evidence. ***Id.*** Leese argues that plea counsel had a duty to be

aware of a medical expert comparable to Dr. Briskin "where Leese specifically flagged the need for a doctor 'to get the petechia thrown out.'" *Id.* at 30 (citation omitted). Leese maintains that an expert's testimony, such as Dr. Briskin's, that there were no petechiae present on Victim, "would have refuted the notion that [Victim] suffered injuries that confirmed her claim that Leese strangled her." *Id.* at 32, 37. According to Leese, such testimony "would have neutralized the physical evidence" and "would rendered this a he-said, she-said case as opposed to a case where [Victim's] testimony *and* the physical evidence appeared certain to defeat Leese's claim of innocence." *Id.* at 38 (emphasis in original). Leese concludes he suffered prejudice from plea counsel's failure to pursue expert testimony because there is a reasonable probability that he would not have pleaded guilty and would have insisted on going to trial. *Id.* at 39.

"[C]laims of counsel's ineffectiveness in connection with a guilty plea will provide a basis for relief only if the ineffectiveness caused an involuntary or unknowing plea." *Commonwealth v. Yager*, 685 A.2d 1000, 1004 (Pa.Super. 1996) (*en banc*). The "voluntariness of [the] plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *Commonwealth v. Lynch*, 820 A.2d 728, 733 (Pa.Super. 2003) (quoting *Commonwealth v. Hickman*, 799 A.2d 136, 141 (Pa.Super. 2002)). A defendant who elects to plead guilty is required to answer all questions during the plea colloquy truthfully and may not later assert grounds for withdrawing the plea that contradict the defendant's

statements during the colloquy. ***Commonwealth v. Pollard***, 832 A.2d 517, 523 (Pa.Super. 2003).

To establish that counsel was ineffective for failing to call a potential witness, the PCRA petitioner must demonstrate:

> (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

***Commonwealth v. Johnson***, 966 A.2d 523, 536 (Pa. 2009) (quoting ***Commonwealth v. Washington***, 927 A.2d 586, 599 (Pa. 2007)). To demonstrate prejudice, a petitioner "must show how the uncalled witnesses' testimony would have been beneficial under the circumstances of the case." ***Commonwealth v. Sneed***, 45 A.3d 1096, 1109 (Pa. 2012) (citation omitted). "Thus, counsel will not be found ineffective for failing to call a witness unless the petitioner can show that the witness's testimony would have been helpful to the defense." ***Id.*** (citation omitted). "A failure to call a witness is not *per se* ineffective assistance of counsel for such decision usually involves matters of trial strategy." ***Id.*** (citation omitted). "Where counsel has made a strategic decision after a thorough investigation of law and facts, it is virtually unchallengeable[.]" ***Commonwealth v. Basemore***, 744 A.2d 717, 735 (Pa. 2000).

"[T]he failure to call an expert witness does not necessarily render counsel's performance deficient." **Commonwealth v. Williams**, 141 A.3d 440, 464 (Pa. 2016). Indeed,

> [t]rial counsel need not introduce expert testimony on his client's behalf if he is able effectively to cross-examine prosecution witnesses and elicit helpful testimony. Additionally, trial counsel will not be deemed ineffective for failing to call a medical, forensic, or scientific expert merely to critically evaluate expert testimony that was presented by the prosecution.

**Id.** (citation omitted).

Here, the PCRA court found that plea counsel testified credibly at the evidentiary hearing and his trial strategy was appropriate. **See** PCRA Ct. Op. at 5. The court also determined that the testimony of Dr. Briskin would have been cumulative to evidence that the Commonwealth would have presented at trial. **Id.**

We agree plea counsel had a proper strategic basis for not calling an expert. Plea counsel's trial strategy was to argue the sexual encounter between Leese and Victim was consensual and that Leese's putting his hands around Victim's neck was part of "their sexual routine." N.T., 11/9/22, at 36. This was a reasonable approach. Thus, calling an expert such as Dr. Briskin who opined there were no signs of petechial hemorrhaging on Victim would have contradicted counsel's trial strategy. Indeed, Dr. Briskin's testimony was consistent with the Commonwealth's medical report that was inconclusive as to whether nonconsensual sex occurred. Leese therefore fails to meet the

second prong of the test for ineffectiveness as plea counsel had a reasonable basis for not retaining an expert.

Leese next argues plea counsel was ineffective for delaying in filing a motion to withdraw his plea and in ultimately filing a deficient motion. Leese's Br. at 39. Leese contends that he expressed his dissatisfaction with his plea to his counsel less than a week after he entered the plea, and counsel failed to inform him of the option of withdrawing his plea. *Id.* at 40. Leese maintains that when counsel finally filed a motion to withdraw his plea four months later, the motion was deficient because it merely asserted a bare claim of innocence. *Id.* at 42-43. According to Leese, "[h]ad [plea] counsel swiftly followed up and filed a [m]otion to [w]ithdraw [p]lea, this would have forestalled the Commonwealth's eventual argument that [Victim] had grown uncooperative and that it would be prejudiced by allowing withdrawal of the plea." *Id.* at 45.

Counsel cannot be deemed ineffective for failing to file a motion to withdraw a plea unless counsel was aware at the relevant time that grounds for withdrawal exist. *Commonwealth v. Gonzalez*, 840 A.2d 326, 331 (Pa.Super. 2003) (*en banc*). "In the absence of counsel's independent awareness of grounds to file a motion to withdraw plea or the entreaty of [an a]ppellant, counsel cannot be deemed ineffective for a failing to file such a plea." *Id.*

Here, the record reflects that Leese emailed plea counsel on May 13, 2020, requesting to withdraw his plea. N.T., 11/9/22, at 41. Plea counsel filed the motion to withdraw plea two weeks later, on May 28, 2020. *Id.* at 41-42.

Although Leese texted plea counsel a few days after he entered his plea, asking, "[W]here do we go from here," the PCRA court credited plea counsel's testimony that he had no indication that Leese wished to withdraw his plea until he received Leese's email on May 13, 2020. A mere expression of dissatisfaction with a plea does not equate to a request to withdraw the plea. "The law does not require that appellant be pleased with the outcome of his decision to enter a plea of guilty[.]" *Commonwealth v. Diaz*, 913 A.2d 871, 873 (Pa.Super. 2006) (citation omitted). "All that is required is that [appellant's] decision to plead guilty be knowingly, voluntarily and intelligently made." *Yager*, 685 A.2d at 1004 (citation omitted) (alteration in *Yager*).

Further, plea counsel followed Leese's express instruction that the motion be based on a claim of innocence and ineffectiveness of counsel. Indeed, plea counsel testified that those were the only two reasons Leese gave to support the motion. N.T., 11/9/22, at 42.

In addressing this issue, the PCRA court found:

Since [Leese] cited no other evidence as a reason for the PCRA court to assess counsel[']s alleged ineffectiveness it[] leaves the PCRA court to fundamentally conclude that [Leese's] claim is meritless since his repeated claim of innocence without anything more is just the same bald assertion wrapped up in a PCRA bow.

Therefore, we will deny [Leese's] claim that his counsel was ineffective as the record clearly demonstrates his basis for withdrawal was that he was innocent, and that [plea counsel] was ineffective, and since we concluded that [plea counsel] could not assert his own ineffectiveness as reasons for withdraw[al] and no evidence was presented that would call into question the legitimacy of [Leese's] *Alford* plea.

PCRA Ct. Rule 1925(a) Op. at 12-13. We find no error. Leese's claim of ineffectiveness on this issue fails.

Lastly, Leese argues that his appellate counsel was ineffective in failing to argue the trial court erred in proceeding with a hearing on Leese's motion to withdraw plea and sentencing when Leese did not have counsel. Leese's Br. at 47. Leese maintains he did not waive his right to counsel for the proceeding and made no indication that he wished to proceed *pro se*. *Id.* at 49. He argues the court also did not make the requisite on-the-record waiver of counsel colloquy pursuant to Pennsylvania Rule of Civil Procedure 121. *Id.* at 50. Leese maintains that he did not engage in any dilatory or unreasonable conduct that would result in forfeiture of counsel. *Id.* at 52.

"The Sixth Amendment to the United States Constitution and Article I, § 9 of the Pennsylvania Constitution guarantees a criminal defendant the right to assistance of counsel." ***Commonwealth v. McLendon***, 293 A.3d 658, 665 (Pa.Super. 2023). However, the right to counsel is not absolute and may be waived or forfeited. ***See Commonwealth v. Lucarelli***, 971 A.2d 1173, 1178-79 (Pa. 2009). "Waiver is an intentional and voluntary relinquishment of a known right." *Id.* at 1079 (citation and internal quotation marks omitted). Conversely, forfeiture "does not require that the defendant intend to relinquish a right, but rather may be the result of the defendant's extremely serious misconduct or extremely dilatory conduct." *Id.* (citation and internal quotation marks omitted). "Where a defendant forfeits his right to counsel, [Rule] 121

and its waiver colloquy requirements do not apply." ***McLendon***, 293 A.3d at 666.

Here, Leese was represented by privately retained counsel for over two years until Leese asked counsel to withdraw. Once the court permitted counsel to withdraw, it continued the hearing on his motion to withdraw his plea for Leese to retain new counsel. Leese at that point was obligated to obtain new counsel or proceed *pro se*. At the continued hearing, Leese testified that he did not qualify for a public defender but could not afford private counsel.

Leese offered no proof of either claim, such as an application to the Public Defender's Office or proof of the costs of private counsel and documentation of his financial assets. Nor did he present anything showing that he took the necessary steps to follow up with obtaining representation. To date, he has not produced anything suggesting that he could not afford private counsel or that the Public Defender improperly denied him representation, and he has not challenged the standards for qualifying for the Public Defender. The Commonwealth objected to any further delay since more than six months had elapsed since Leese entered his plea and Victim had become uncooperative because of the length of the process. Thus, Leese forfeited his right to counsel, as the record supports the conclusion that he "put himself in this position intentionally." ***See Commonwealth v. Coleman***, 905 A.2d 1003, 1007-08 (Pa.Super. 2006). Accordingly, the court was not required to conduct a Rule 121 waiver-of-counsel colloquy. ***See McLendon***, 293 A.3d at 666.

Appellate counsel indicated that she did not pursue this claim for strategic reasons as she believed the claim lacked merit. **See** N.T., 11/9/22, at 55-56. Leese has not shown that it was arguably meritorious, and based on the foregoing, appellate counsel had a reasonable basis for not raising it on direct appeal. Accordingly, Leese is not entitled to relief on this claim.

Order affirmed.

This decision was reached prior to January 2, 2024, with Judge McCaffery's participation.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 01/03/2024